LAWRENCE G. BROWN
Acting United States Attorney
JILL M. THOMAS
Assistant U.S. Attorney
501 I Street, Suite 10-100
Sacramento, California 95814
Telephone: (916) 554-2781



**FILED**

MAY - 7 2009

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. No. 07-406 MCE |
| | ) | |
| Plaintiff, | ) | PLEA AGREEMENT |
| | ) | |
| v. | ) | |
| | ) | |
| EDUARDO ARELLANO-FELIX, | ) | Hon. Morrison C. England, Jr. |
| | ) | |
| Defendant. | ) | |

## I.

## INTRODUCTION

**A.  Scope of Agreement:**  The indictment in this case charges the defendant with Conspiracy to Distribute and to Possess With Intent to Distribute Methamphetamine, and Possession of Methamphetamine With Intent to Distribute in violation of 21 U.S.C. §§846 and 841(a)(1).  This document contains the complete Plea Agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case.  This Plea Agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

1

**B.  Court Not a Party:**  The Court is not a party to this Plea Agreement.  Sentencing is a matter solely within the discretion of the Court, the Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this Plea Agreement.  If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this Plea Agreement.  The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

## II.

### DEFENDANT'S OBLIGATIONS

**A.  Guilty Pleas:**  The defendant will plead guilty to Conspiracy to Distribute and Possess With Intent to Distribute Methamphetamine, in violation of 21 U.S.C. §§846 and 841(a)(1), as charged in the indictment in this case.  The defendant agrees that he is in fact guilty of these charges and that the facts set forth in the Factual Basis attached hereto as Exhibit A are accurate.

**B.  Special Assessment:**  The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing.  The defendant understands that this Plea Agreement is voidable by the government if he fails to pay the assessment prior to that hearing.  If the defendant is unable to pay the special

1 assessment at the time of sentencing, he agrees to earn the money to
2 pay the assessment, if necessary by participating in the Inmate
3 Financial Responsibility Program.

4    **C. Agreement to Cooperate:**  The defendant agrees to cooperate
5 fully with the government and any other federal, state, or local law
6 enforcement agency, as directed by the government.  As used in this
7 Plea Agreement, "cooperation" requires the defendant:  (1) to
8 respond truthfully and completely to all questions, whether in
9 interviews, in correspondence, telephone conversations, before a
10 grand jury, or at any trial or other court proceeding; (2) to attend
11 all meetings, grand jury sessions, trials, and other proceedings at
12 which the defendant's presence is requested by the government or
13 compelled by subpoena or court order; (3) to produce voluntarily any
14 and all documents, records, or other tangible evidence requested by
15 the government; (4) not to participate in any criminal activity
16 while cooperating with the government; and (5) to disclose to the
17 government the existence and status of all money, property, or
18 assets, of any kind, derived from or acquired as a result of, or
19 used to facilitate the commission of, the defendant's illegal
20 activities or the illegal activities of any conspirators.

21    If the defendant commits any crimes or if any of the
22 defendant's statements or testimony prove to be knowingly false,
23 misleading, or materially incomplete, or if the defendant otherwise
24 violates this Plea Agreement in any way, the government will no
25 longer be bound by its representations to the defendant concerning
26 the limits on criminal prosecution and sentencing as set forth
27 herein.  The determination whether the defendant has violated the
28 Plea Agreement will be under a probable cause standard.  If the

3

1  defendant violates the Plea Agreement, he shall thereafter be
2  subject to prosecution for any federal criminal violation of which
3  the government has knowledge, including but not limited to perjury,
4  false statements, and obstruction of justice.  Because disclosures
5  pursuant to this Plea Agreement will constitute a waiver of the
6  Fifth Amendment privilege against compulsory self-incrimination, any
7  such prosecution may be premised on statements and/or information
8  provided by the defendant.  Moreover, any prosecutions that are not
9  time-barred by the applicable statute of limitations as of the date
10 of this Plea Agreement may be commenced in accordance with this
11 paragraph, notwithstanding the expiration of the statute of
12 limitations between the signing of this Plea Agreement and the
13 commencement of any such prosecutions.  The defendant agrees to
14 waive all defenses based on the statute of limitations or delay of
15 prosecution with respect to any prosecutions that are not time-
16 barred as of the date of this Plea Agreement.

17      If it is determined that the defendant has violated any
18 provision of this Plea Agreement or if the defendant successfully
19 moves to withdraw his plea:  (1) all statements made by the
20 defendant to the government or other designated law enforcement
21 agents, or any testimony given by the defendant before a grand jury
22 or other tribunal, whether before or after this Plea Agreement,
23 shall be admissible in evidence in any criminal, civil, or
24 administrative proceedings hereafter brought against the defendant;
25 and (2) the defendant shall assert no claim under the United States
26 Constitution, any statute, Rule 11(f) of the Federal Rules of
27 Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or
28 any other federal rule, that statements made by the defendant before

1  or after this Plea Agreement, or any leads derived therefrom, should
2  be suppressed.  By signing this Plea Agreement, the defendant waives
3  any and all rights in the foregoing respects.

### III.

### THE GOVERNMENT'S OBLIGATIONS

**A.  Recommendations:**

7       **1.  Incarceration Range:**  The government will recommend
8  that the defendant be sentenced to the low end of the applicable
9  guideline range for his offense, including the application of the
10 mandatory statutory minimum term, as determined by the United States
11 Probation Office.

12      **2.  Acceptance of Responsibility:** If the United States
13 Probation Office determines that a three-level reduction in
14 defendant's offense level for his full and clear demonstration of
15 acceptance of responsibility is appropriate under U.S.S.G. §3E1.1,
16 the government will not oppose such a reduction and will so move
17 under §3E1.1(b), so long as the defendant pleads guilty, meets with
18 and assists the probation officer in the preparation of the pre-
19 sentence report, is truthful and candid with the probation officer,
20 and does not otherwise engage in conduct that constitutes
21 obstruction of justice within the meaning of U.S.S.G. §3C1.1, either
22 in the preparation of the pre-sentence report or during the
23 sentencing proceeding.

24      **3.  Reduction of Sentence for Cooperation:**  The government
25 agrees to recommend at the time of sentencing that the defendant's
26 sentence of imprisonment be reduced by up to 20% of the applicable
27 guideline sentence if he provides substantial assistance to the
28 government, pursuant to U.S.S.G. §5K1.1.  The defendant understands

that he must comply with paragraph II(D) of this Plea Agreement.
The defendant understands that it is within the sole and exclusive
discretion of the government to determine whether the defendant has
provided substantial assistance.  The defendant understands that the
government may recommend a reduction in his sentence of less than
20% or no reduction at all, depending upon the level of assistance
the government determines that the defendant has provided.  The
defendant further understands that a motion pursuant to U.S.S.G.
§5K1.1 is only a recommendation and is not binding on the Court,
that this Plea Agreement confers no right upon the defendant to
require that the government make a §5K1.1 motion, and that this Plea
Agreement confers no remedy upon the defendant in the event that the
government declines to make a §5K1.1 motion.  In particular, the
defendant agrees not to try to file a motion to withdraw his plea
based on the fact that the government decides not to recommend a
sentence reduction or recommends a sentence reduction less than the
defendant thinks is appropriate.

If the government determines that the defendant has provided
further cooperation within one year following his sentencing, the
government may move for a further reduction of his sentence pursuant
to Rule 35 of the Federal Rules of Criminal Procedure.

**B.  Limitation on Use of Information For Sentencing:**  Other
than as set forth above, the government agrees that any
incriminating information provided by the defendant during his
cooperation will not be used in determining the applicable guideline
range, pursuant to U.S.S.G. §1B1.8.

///

///

6

1

2

**IV.**

**ELEMENTS OF THE OFFENSE**

3     **A.  Elements of the Offense:**  At a trial, the government would
4  have to prove beyond a reasonable doubt the following elements of
5  the offense to which the defendant is pleading guilty, Conspiracy to
6  Distribute and to Possess With Intent to Distribute Methamphetamine:
7  (1) beginning and ending on or about the dates stated in the
8  information, there was an agreement between two or more persons to
9  commit at least one crime as charged in the information; and (2) the
10  defendant became a member of the conspiracy knowing of at least one
11  of its objects and intending to help accomplish it.  The government
12  would also have to prove that the amount of methamphetamine was at
13  least 50 grams of actual methamphetamine or at least 500 grams of a
14  mixture or substance containing a detectable amount of
15  methamphetamine.

16

17

**V.**

**MAXIMUM SENTENCE**

18     **A.  Maximum Penalty:**  The maximum sentence which the Court can
19  impose is life imprisonment, with a mandatory minimum sentence of 10
20  years of incarceration (absent a motion by the government for
21  reduction pursuant to 18 U.S.C. §3553(e)), a period of supervised
22  release of a maximum term of life and a minimum term of 5 years, a
23  fine of $4 million, and a special assessment of $100.  In addition,
24  the defendant may be ineligible for certain federal and/or state
25  assistance and/or benefits, pursuant to 21 U.S.C. §862.

26     **B.  Violations of Supervised Release:**  The defendant understands
27  that if he violates a condition of supervised release at any time
28  during the term of supervised release, the Court may revoke the term

7

1  of supervised release and require the defendant to serve up to five
2  additional years imprisonment.

3                                VI.

4                      **SENTENCING DETERMINATION**

5      **A.   Statutory Authority**:  The defendant understands that the
6  Court must consult the Federal Sentencing Guidelines (as promulgated
7  by the Sentencing Commission pursuant to the Sentencing Reform Act
8  of 1984, 18 U.S.C. §§ 3551-3742 and 28 U.S.C. §§ 991-998, and as
9  modified by United States v. Booker and United States v. Fanfan,
10  540 U.S. 220, 125 S.Ct. 738 (2005)) and must take them into account
11  when determining a final sentence.  The defendant understands that
12  the Court will determine a non-binding and advisory guideline
13  sentencing range for this case pursuant to the Sentencing
14  Guidelines.  The defendant further understands that the Court will
15  consider whether there is a basis for departure from the guideline
16  sentencing range (either above or below the guideline sentencing
17  range) because there exists an aggravating or mitigating
18  circumstance of a kind, or to a degree, not adequately taken into
19  consideration by the Sentencing Commission in formulating the
20  Guidelines.  The defendant further understands that the Court, after
21  consultation and consideration of the Sentencing Guidelines, must
22  impose a sentence that is reasonable in light of the factors set
23  forth in 18 U.S.C. § 3553(a).

24      **B.   Stipulations Affecting Guidelines Calculation**:  The
25  government and the defendant agree that there is no material dispute
26  as to the following sentencing guidelines variables and therefore
27  stipulate to the following:

28          **1.   Base Offense Level**: The base offense level is 36 based

                                8

on the amount of actual methamphetamine for which the defendant is personally responsible.

**2.    Firearm Enhancement:** +2 [See U.S.S.G. § 2D1.1(b)(1)]

**3.    Role in the Offense Adjustment:** None.

**4.    Acceptance of Responsibility:** -3 [See paragraph III(A)(2) above]

**5.    Total Contemplated Adjusted Offense Level:** 35

**6.    Departures or Other Enhancements or Reductions:** The parties stipulate and agree that they will not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"), or cross-references.  Both parties stipulate and agree not to move for, or argue in support of, any departure within or from the Sentencing Guidelines, other than the departure for substantial assistance as discussed in paragraph III(A)(3), which is governed by the provisions of paragraphs III(A)(3) and II(D).

**VII.**

**WAIVERS**

**A.    Waiver of Constitutional Rights:**  The defendant understands that by pleading guilty he is waiving the following constitutional rights:  (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to testify on his behalf; (e) to confront and cross-examine witnesses against him; and (f) not to be compelled to incriminate himself.

**B.    Waiver of Appeal and Collateral Attack:**  The defendant understands that the law gives him a right to appeal his conviction

9

1  and sentence.  He agrees as part of his plea, however, to give up
2  the right to appeal the conviction and the right to appeal any
3  aspect of the sentence imposed in this case so long as his sentence
4  is no longer than the top of the Sentencing Guidelines range
5  determined by the Court consistent with the stipulations set forth
6  above about the Sentencing Guidelines variables.

7      The defendant also gives up any right he may have to bring a
8  post-conviction attack on his conviction or his sentence.  He
9  specifically agrees not to file a motion under 28 U.S.C. §2255 or
10  §2241 attacking his conviction or sentence.

11     If the defendant's conviction on any of the counts to which he
12  is pleading is ever vacated at the defendant's request, or his
13  sentence is ever reduced at his request, the government shall have
14  the right (1) to prosecute the defendant on any of the counts to
15  which he pleaded guilty; (2) to reinstate any counts that may be
16  dismissed pursuant to this Plea Agreement; and (3) to file any new
17  charges that would otherwise be barred by this Plea Agreement.  The
18  decision to pursue any or all of these options is solely in the
19  discretion of the United States Attorney's Office.  By signing this
20  Plea Agreement, the defendant agrees to waive any objections,
21  motions, and defenses he might have to the government's decision.
22  In particular, he agrees not to raise any objections based on the
23  passage of time with respect to such counts including, but not
24  limited to, any statutes of limitation or any objections based on
25  the Speedy Trial Act or the Speedy Trial Clause of the Sixth
26  Amendment.

27     **C.  Waiver of Attorneys' Fees and Costs**:  The defendant agrees
28  to waive all rights under the "Hyde Amendment," Section 617, P.L.

10

1  105-119 (Nov. 26, 1997), to recover attorneys' fees or other
2  litigation expenses in connection with the investigation and
3  prosecution of all charges in the above-captioned matter and of any
4  related allegations (including without limitation any charges to be
5  dismissed pursuant to this Plea Agreement and any charges previously
6  dismissed).

7  **D. Waiver of DNA Testing:** Defendant understands that the
8  government does not intend to conduct DNA testing of any of the
9  items of evidence obtained in this case. Defendant understands
10 that, before entering a guilty plea pursuant to this agreement, he
11 could request DNA testing of evidence in this case. Defendant
12 further understands that, with respect to the offense to which he is
13 pleading guilty pursuant to this agreement, he would have the right
14 to request DNA testing of evidence after conviction under the
15 conditions specified in 18 U.S.C. §3600. Knowing and understanding
16 his right to request DNA testing, defendant knowingly and
17 voluntarily gives up that right with respect to any items of
18 evidence there may be in this case that might be amenable to DNA
19 testing. Defendant understands and acknowledges that by giving up
20 this right, he is giving up any ability to request DNA testing of
21 evidence in this case in the current proceeding, in any proceeding
22 after conviction under 18 U.S.C. §3600, and in any other proceeding
23 of any type. Defendant further understands and acknowledges that by
24 giving up this right, he will never have another opportunity to have
25 the evidence in this case submitted for DNA testing, or to employ
26 the results of DNA testing to support a claim that defendant is
27 innocent of the offense to which he is pleading guilty.
28 ///

11

1

## VIII.

### ENTIRE PLEA AGREEMENT

Other than this Plea Agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

## IX.

### APPROVALS AND SIGNATURES

**A.  Defense Counsel:**  I have read this Plea Agreement and have discussed it fully with my client.  The Plea Agreement accurately and completely sets forth the entirety of the agreement.  I concur in my client's decision to plead guilty as set forth in this Plea Agreement.

DATED:  **5-2-07**

PRECILIANO MARTINEZ
Attorney for Defendant

**B.  Defendant:**  I have read this Plea Agreement and carefully reviewed every part of it with my attorney.  I understand it, and I voluntarily agree to it.  Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case.  No other promises or inducements have been made to me, other than those contained in this Plea Agreement.  In addition, no one has threatened or forced

///

///

///

12

1 me in any way to enter into this Plea Agreement.  Finally, I am
2 satisfied with the representation of my attorney in this case.

3
4 DATED: _5_ / _2_ / _09_              _Eduardo Arellano R._
                                       EDUARDO ARELLANO-FELIX, Defendant

5      **C.   Attorney for United States:**  I accept and agree to this
6 Plea Agreement on behalf of the government.

7
8 DATED: _5/7/09_                      LAWRENCE G. BROWN
                                       Acting United States Attorney
9
10                                     By: _____
11                                         JILL M. THOMAS
                                           Assistant U.S. Attorney

12     **D.   Court Certified Interpreter/Translator:**  I declare that I
13 am a court certified Spanish-English interpreter/translator.  On
14 _5/2/09_____, I read the entire contents of the foregoing Plea
15 Agreement to Eduardo Arellano-Felix, translating the document from
16 English to Spanish.

17
18
19
20
21
22
23
24
25
26
27
28

                                     13

1

2

## EXHIBIT "A"

### Factual Basis for Plea

        Beginning no later than July 10, 2007 and continuing thereafter
to on or about August 27, 2007, in the Eastern District of
California, the defendant Eduardo Arellano-Felix agreed with co-
defendants Oscar Lopez, Jose Garcia Guzman, and Becky Martinez to
distribute methamphetamine.  The defendant along with Oscar Lopez
agreed to distribute to Martinez and Guzman amounts of
methamphetamine on a continuing basis for further distribution.

        In July and August 2007 in Stockton, CA, under the direction of
law enforcement, a confidential source (CS) made controlled
purchases of methamphetamine from the co-defendants Jose Garcia
Guzman and Becky Martinez.  The first was on July 10 for a small
amount of methamphetamine, the second and third were on July 24,
2007 and were each for two ounces of methamphetamine.  The total was
82.9 grams of actual methamphetamine.

        On August 13, 2007, under the direction of law enforcement, the
CS purchased 1/4 lb of methamphetamine from the co-defendant Jose
Garcia Guzman and co-defendant Becky Martinez.  During this meeting,
the CS inquired as to the ability of the defendant to obtain and
sell him/her five pounds of methamphetamine.  Guzman responded that
it was no problem.

        On August 27, 2007 the CS requested to purchase from co-
defendant Guzman 5 pounds of methamphetamine.  On this day,
surveillance observed Guzman and Martinez arrive at the Bandoni Ave.
residence to pick-up the methamphetamine.  Officers saw another car
leave the garage with defendant Arellano-Felix driving and the co-
defendant Lopez in the passenger seat.  With surveillance in tow,
the four defendants, two in one car and two in the other, then drove
to the Sunny Road residence in Stockton, CA to complete the
transaction with the CS.  The defendant and Oscar Lopez were also
there standing outside the house.  The CS went into the residence,
met with two co-defendants and observed the 5 pounds of
methamphetamine in a black bag on the kitchen table.  The CS stated
he/she had to retrieve the money to pay for the methamphetamine and
left the residence.  The CS then gave the arrest signal and officers
arrested the defendant and co-defendants, and pursuant to a federal
search warrant seized the 5 pounds of methamphetamine from the
residence.  The 5 pound substance tested positive for the presence
of methamphetamine.

        During the arrest, law enforcement recovered a gun from the
defendant's waistband.

1